Peter Rukin, SBN 178336
Valerie Brender, SBN 298224
RUKIN HYLAND LLP
100 Pine Street, Suite 2150
San Francisco, CA 94111
Telephone: (415) 421-1800
Facsimile: (415) 421-1700
prukin@rhdtlaw.com
vbrender@rhdtlaw.com

*Attorneys for Plaintiffs*

(Additional Counsel on Following Page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| FERNANDO RAMIREZ, IVAN BUNDY, NORMAN SUHOVY,  MICHAEL HUMMEL, JERRY LOYD, HENRY KITTRELL, FRANCISCO TROVAO, DANIEL SHILLING, and HERALDO VELASQUEZ,<br><br>          Plaintiffs,<br><br>      v.<br><br>FLOWERS FOODS, INC., FLOWERS BAKING CO. OF CALIFORNIA, and FLOWERS BAKING CO. OF MODESTO, Flowers BAKERIES BRANDS, INC.,<br><br>          Defendants. | **CASE NO.** _____<br><br>**COMPLAINT FOR DAMAGES**<br><br>**(1) REIMBURSEMENT OF BUSINESS EXPENSES (Labor Code §2802);**<br>**(2) UNLAWFUL DEDUCTIONS FROM WAGES (Labor Code §§221, 223, 400-410);**<br>**(3) FAILURE TO PROVIDE OFF-DUTY MEAL PERIODS (Labor Code §§226.7, 512);**<br>**(4) FAILURE TO AUTHORIZE AND PERMIT PAID REST PERIODS (Labor Code §§226.7, 1194);**<br>**(5) FAILURE TO FURNISH ACCURATE WAGE STATEMENTS (Labor Code §§226, 226.3);**<br>**(6) CALIFORNIA UNPAID OVERTIME COMPENSATION (Labor Code §§ 410, 1194, *et seq.*, IWC Wage Order No. 1);**<br>**(7) FEDERAL UNPAID OVERTIME COMPENSATION (FLSA, 29 U.S.C. §§ 207, 216)**<br>**(8) VIOLATIONS OF UCL (Bus. & Prof. Code §17200 *et seq.*)**<br><br>**DEMAND FOR JURY TRIAL** |

Aaron Kaufmann, SBN 148580
Elizabeth Gropman, SBN 294156
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile: (510) 272-0174
akaufmann@leonardcarder.com
bross@leonardcarder.com
egropman@leonardcarder.com

*Attorneys for Plaintiffs*

COMPLAINT FOR DAMAGES

1.     Plaintiffs Fernando Ramirez, Ivan Bundy, Norman Suhovy, Michael Hummel, Jerry Loyd, Henry Kittrell, Francisco Trovao, Daniel Shilling, and Heraldo Velasquez allege the following for their complaint.

## I.     JURISDICTION

2.     This Court has jurisdiction over Plaintiffs' claims under the federal Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 207, 216(b), pursuant to 28 U.S.C. § 1331.

3.     This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.     This Court also has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

## II.     VENUE AND INTRADISTRICT ASSIGNMENT

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Santa Clara County, and within the Division and Courthouse in which this action has been commenced.

## III.     INTRODUCTION

6.     This is an action for relief from Defendants' misclassification of their California bakery distributor drivers ("Delivery Drivers") as "independent contractors."  Defendants Flowers Foods, Inc. ("Flowers Foods"), Flowers Baking Co. of California ("Flowers-California"), Flowers Baking Company of Modesto ("Flowers-Modesto"), Flowers Bakeries Brands, Inc. ("Flowers Bakeries"), and their affiliates (collectively "Defendants" or "Flowers") are in the wholesale bakery business, relying on drivers such as Plaintiffs to deliver to and stock baked goods at retail grocery store outlets, restaurants, and other retail store outlets.  Defendants retain and exercise pervasive control over their bakery distribution operations, including by retaining and exercising such control over Plaintiffs, such that Plaintiffs are in fact Defendants' employees under California law.

7.     By misclassifying Plaintiffs as independent contractors, Defendants have sought to avoid various duties and obligations owed to employees under California's Labor Code and

Industrial Welfare Commission ("IWC") wage orders, including: the duty to indemnify employees for all expenses and losses necessarily incurred in connection with their employment (Cal. Labor Code §2802; IWC wage order No. 1, §§ 8-9); the duty to provide off-duty meal periods (Cal. Labor Code §§ 512, 226.7; IWC wage order No. 1, § 11); ); the duty to authorize and permit paid rest periods (Cal. Labor Code §§ 226.7, 1194; IWC wage order No. 1, § 12); the duty to pay overtime premium pay under California state law (Cal. Labor Code §, IWC wage order No. 1) and the federal Fair Labor Standards Act (29 U.S.C. § 207), and other legal obligations.

8.     Plaintiffs challenge Defendants' policy of willfully and unlawfully misclassifying their Drivers as "independent contractors" and thereby refusing to indemnify them for employment-related expenses and losses, taking wrongful deductions from their wages, coercing them to purchase necessary services and items, failing to provide off-duty meal periods, failing to authorize and permit paid rest periods, failing to document actual hours worked on pay statements as required by California law, and failing to pay state and federal overtime premium pay.  This misclassification policy has been in effect since at least February 2013.

9.     Plaintiffs bring claims for reimbursement of business expenses and losses, reimbursement of deductions wrongfully taken from wages, meal period pay, rest period pay, unpaid minimum wage (and liquidated damages), unpaid overtime premium pay (and liquidated damages) statutory and civil penalties, interest, and attorneys' fees and costs, under Cal. Labor Code §§ 203, 218.5, 226.7, 1194, 1194.2, and 2802,  Cal. Code of Civil Procedure § 1021.5, and the FLSA, 29 U.S.C. § 216. Plaintiffs also seek relief, pursuant to Cal. Business and Professions Code §§ 17200-17208 (also referred to herein as the "UCL"), including restitution and disgorgement of all benefits Defendants have obtained from the unlawful practices referenced above and detailed below.

## IV.     PARTIES

### A.     Plaintiffs

10.     Plaintiff Fernando Ramirez resides in San Jose, California.  He began as a bakery distributor driver for Flowers in approximately October of 2013 through an employment placement with ABM Industries, Inc. and was treated as a W-2 employee for tax purposes. In

approximately January 2014, Plaintiff Ramirez entered into a Distributor Agreement, under which he has continued to serve as a Flowers Delivery Driver.  Throughout his tenure as a Flowers Delivery Driver, Plaintiff Ramirez has worked out of Flowers' facilities located in San Jose, California (Santa Clara County).  Plaintiff Ramirez has driven a truck and standard passenger vehicles to carry out his duties for Defendants. In order to meet Flowers' and the customers' demands for product delivery and merchandising, Plaintiff Ramirez routinely works from approximately 6:00 a.m. to 3:00 or 4:00 p.m. on Monday, Tuesday, Thursday, Friday, and Saturday.

11.     Plaintiff Ivan Bundy resides in Fresno, California.  He began as a bakery distributor driver for Flowers in approximately June 2013 through an employment placement with ABM Industries, Inc. and was treated as a W-2 employee for tax purposes. In approximately July 2013, Plaintiff Bundy entered into a Distributor Agreement, under which he has continued to serve as a Flowers Delivery Driver.  Throughout his tenure as a Flowers Delivery Driver, Plaintiff Bundy has worked out of Flowers' facilities located in Fresno, California.  Plaintiff Bundy has driven a truck and standard passenger vehicles to carry out his duties for Defendants.  In order to meet Flowers' and the customers' demands for product delivery and merchandising, Plaintiff Bundy routinely works  from approximately 7:30 a.m. to between 12:00 and 2:00 p.m. on Monday, Tuesday, Thursday, Friday, and Saturday.  Before Plaintiff Bundy sold a portion of his route, he routinely began work around 5:00 a.m. and finished work around 4:00 or 5:00 p.m.  On Wednesdays and Sundays, Plaintiff Bundy regularly works between two to three hours servicing customers on his route, rotating stock on the shelves, and performing other merchandising tasks.

12.     Plaintiff Norman Suhovy resides in Visalia, California.  He began as a bakery distributor driver for Flowers in approximately March 2013 through an employment placement with ABM Industries, Inc. and was treated as a W-2 employee for tax purposes. In approximately May or June 2013, Plaintiff Suhovy entered into a Distributor Agreement, under which he has continued to serve as a Flowers Delivery Driver.  Throughout his tenure as a Flowers Delivery Driver, Plaintiff Suhovy has worked out of Flowers' facilities located in Stockton, California. Plaintiff Suhovy has driven a pickup truck with and without trailer to carry out his duties for

Defendants.  In order to meet Flowers' and the customers' demands for product delivery and merchandising, Plaintiff Suhovy routinely works  from approximately 3:00 a.m. to 11:30 or 12:00 p.m. on Monday, Tuesday, Thursday, Friday, and Saturday.  .  Before Plaintiff Suhovy sold a portion of his route, he routinely began work around 3:00 a.m. and finished work around 1:00 to 2:00 p.m.  On Wednesdays and Sundays, Plaintiff Suhovy regularly works between two to three hours servicing customers on his route, rotating stock on the shelves, and performing other merchandising tasks.

13.     Plaintiff Michael Hummel resides in Salinas, California. He began as a bakery distributor driver for Flowers through an employment placement with ABM Industries, Inc. and was treated as a W-2 employee for tax purposes. In approximately September 2013, Plaintiff Hummel entered into a Distributor Agreement, under which he served as a Flowers Delivery Driver until early 2016.  Throughout his tenure as a Flowers Delivery Driver, Plaintiff Hummel worked out of Flowers' facilities located in Salinas, California.  Plaintiff Hummel carried out his duties using a box truck and, a personal vehicle.   In order to meet Flowers' and the customers' demands for product delivery and merchandising, Plaintiff Hummel routinely works from approximately 3:30 a.m. or 4:00 a.m. to approximately 4:00 and 6:00 p.m. on Monday, Tuesday, Thursday, Friday, and Saturday.  On Wednesdays and Sundays, Plaintiff Hummel regularly works from about 6:00 to 8:00 a.m. to around 10:00 to 11:00 a.m. servicing customers on his route, rotating stock on the shelves, and performing other merchandising tasks..

14.     Plaintiff Jerry Loyd resides in Clovis, California. He began as a bakery distributor driver for Flowers through an employment placement with ABM Industries, Inc. and was treated as a W-2 employee for tax purposes. In approximately June 2013, Plaintiff Loyd entered into a Distributor Agreement, under which he served as a Flowers Delivery Driver until June 2017. Throughout his tenure as a Flowers Delivery Driver, Plaintiff Loyd worked out of Flowers' facilities located in Fresno, California.  Plaintiff Loyd carried out his duties using both a truck and his pickup truck.  In order to meet Flowers' and the customers' demands for product delivery and merchandising, Plaintiff Loyd routinely works approximately 2:30 a.m. to around 12:30 to 1:00 p.m. on Monday, Tuesday, Thursday, Friday, and Saturday.  Before he sold a portion of his route,

he routinely began work around 12:30 a.m. and finished work around 2:30 to 3:00 p.m.  On Wednesdays and Sundays, Plaintiff Bundy regularly works from approximately 5:00 a.m. to about 7:00 or 8:00 a.m. servicing customers on his route, rotating stock on the shelves, and performing other merchandising tasks; before he sold a portion of his route, he worked from approximately 5:00 a.m. to about 10:00 to 11:00 a.m. on those days.

15.     Plaintiff Henry Kittrell resides in Sacramento, California. He began as a bakery distributor driver for Flowers through an employment placement with ABM Industries, Inc. and was treated as a W-2 employee for tax purposes. In approximately July of 2013, Plaintiff Kittrell entered into a Distributor Agreement, under which he served as a Flowers Delivery Driver until approximately May, 2017.  Throughout his tenure as a Flowers Delivery Driver, Plaintiff Kittrell worked out of Flowers' facilities located in Sacramento, California.  Plaintiff Kittrell drove a box truck and pickup truck to carry out his duties for Defendants.  In order to meet Flowers' and the customers' demands for product delivery and merchandising, Plaintiff Kittrell routinely worked from  approximately 3:00 a.m. to about 12:00 or 1:00 p.m. on Monday, Tuesday, Thursday, Friday, and Saturday.  On Wednesdays and Sundays, Plaintiff Kittrell regularly worked from approximately 4:00 a.m. to about 7:00 a.m. servicing customers on his route, rotating stock on the shelves, and performing other merchandising tasks. Plaintiff Francisco Trovao resides in San Jose, California.  He began as a bakery distributor driver for Flowers in approximately March 2014 working on the route of another delivery driver.  In approximately November 2015, Plaintiff Trovao entered into a Distributor Agreement, under which he has continued to serve as a Flowers Delivery Driver.  Throughout his tenure as a Flowers Delivery Driver, Plaintiff Trovao has worked out of Flowers' facilities located in San Jose, California.  Plaintiff Trovao has driven a box truck and a personal vehicle to carry out his duties for Defendants.  In order to meet Flowers' and the customers' demands for product delivery and merchandising, Plaintiff Trovao routinely works from approximately 3:00 a.m. or 4:00 a.m. to around 12:00 p.m. on Monday, Tuesday, Thursday, Friday, and Saturday.

16.     Plaintiff Daniel Shilling resides in Santa Rosa, California.  He began as a bakery distributor driver for Flowers in approximately 2013, and entered into a Distributor Agreement,

under which he served as a Flowers Delivery Driver.  Throughout his tenure as a Flowers Delivery Driver, Plaintiff Shilling worked out of Flowers' facilities located in Santa Rosa, California. Plaintiff Shilling has driven a box truck as well as a 2004 dodge ram 1500 to carry out his duties for Defendants.  In order to meet Flowers' and the customers' demands for product delivery and merchandising, Plaintiff Shilling routinely works from approximately 3:30am to between 1:00 and 3:30 pm on Monday, Tuesday, Thursday, Friday, and Saturday.

17.     Plaintiff Heraldo Velasquez resides in San Jose, California. He began as a bakery distributor driver for Flowers in approximately June 2013 through an employment placement with ABM Industries, Inc. and was treated as a W-2 employee for tax purposes. In approximately September or October 2013, Plaintiff Velasquez entered into a Distributor Agreement, under which he served as a Flowers Delivery Driver until approximately January 2017.  Throughout his tenure as a Flowers Delivery Driver, Plaintiff Velasquez worked out of Flowers' facilities located in Salinas, California.  Plaintiff Velasquez drove a truck and standard passenger vehicles to carry out his duties for Defendants. In order to meet Flowers' and the customers' demands for product delivery and merchandising, Plaintiff Velasquez routinely worked from as early as 1:00 am to between 4:00 and 9:00 p.m. on Monday, Tuesday, Thursday, Friday, and Saturday.

**B.**     **Defendants**

18.     Defendant Flowers Foods, Inc. is incorporated under the laws of Georgia. And has its principal executive offices in Thomasville, Georgia.  Defendant Flowers Foods is and at all relevant times was an employer covered by the Cal. Labor Code and IWC wage order No. 1.

19.     Defendant Flowers Baking Co. of California, LLC, Inc. is incorporated under the laws of California, and, upon information and belief, is a wholly-owned subsidiary of Flowers Foods.  Defendant Flowers-California is, and at all relevant times since approximately January 2012, was, an employer covered by the Cal. Labor Code and IWC wage order No.1.

20.     Defendant Flowers Baking Co. of Modesto, LLC, Inc. is incorporated under the laws of Nevada, and, upon information and belief, is a wholly-owned subsidiary of Flowers Foods.  Defendant Flowers-Modesto is, and at all relevant times since approximately January 2012, was, an employer covered by the Cal. Labor Code and IWC wage order No.1.

21.     Defendant Flowers Bakeries Brands, Inc. is incorporated under the laws of Delaware, and, upon information and belief, is a wholly-owned subsidiary of Flowers Foods. Defendant Flowers Bakeries is, and at all relevant times since approximately January 2012, was, an employer covered by the Cal. Labor Code and IWC wage order No.1.

22.     Plaintiffs are informed and believe, and on such information and belief allege, that each defendant acted in all respects pertinent to this action as the agent of the other defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and that the acts of each defendant are legally attributable to the other defendants.

## V.     STATEMENT OF FACTS

23.     Defendants are in the bakery business, baking and distributing brand breads and other baked goods, including brands such as Wonder, Home Pride, TastyKake, Country Kitchen, and Mi Casa.  Flowers Foods is a publicly owned corporation, traded on the NYSE.

24.     Flowers entered in the California market in or about the first quarter of 2013 when it acquired an existing bakery company that had customers throughout California. Those customers were mostly large corporate companies, including major grocery store chains, "big box" stores, and chains of restaurant.  Flowers continued to service those accounts and develop new accounts throughout the covered period.

25.     In California, Flowers Foods has operated in conjunction with Flowers-California and subsequently Flowers-Modesto. When Flowers first took over the business in California, it relied on bakery delivery drivers hired and paid through a staffing agency, ABM Industries, Inc. The drivers provided by ABM were treated as W-2 employees for tax purposes.  Over the first half of 2013, Flowers began entering into "Distributor Agreements" with many of the ABM-supplied drivers, such as Plaintiff Mark Soares and Brian Botelho, and other individuals.  By the second half of 2013, most of Flowers' Delivery Drivers operated under a Distributor Agreement. The Distributor Agreements authorize the contracting Delivery Driver to service a designated territory.  Delivery Drivers are required to pay thousands of dollars in order to work their route. The territory typically comprises of a route populated by corporate customers of Flowers. The Distributor Agreements uniformly classify the Delivery Drivers as "independent contractors."

26.     Defendants have employed hundreds of Delivery Drivers out of warehouse facilities located in several Northern California locations, including facilities located in the County of Santa Clara.

27.     Plaintiffs and the other Delivery Drivers have been integral to the operations of Defendants' core business, as they were hired to timely deliver Flowers' baked goods to Flowers' customers.

28.     Defendants retain the exclusive right to control the manner and means by which Plaintiffs perform their jobs.  Plaintiffs pick up trays of Flowers baked goods from Defendants' warehouses.  Plaintiffs work designated routes delivering to and stocking shelves of customers assigned by Defendants.  Defendants provide Plaintiffs with directions and schematics for how to stock its customers' shelves.  Plaintiffs interact with Defendants' personnel at the warehouse on a daily basis.

29.     Defendants require the Plaintiffs to purchase the baked goods from Defendants to resell to Flowers' customers.  Defendants contract directly with the customers.  Defendants unilaterally determine the amount of baked goods it agrees to deliver to and the prices charged to their customers.  Plaintiffs have no control over the rates charged to Defendants' customers.

30.     Defendants require Plaintiffs to "rotate" the baked goods stocked in stores per Defendants' policy and schedule.  Defendants' personnel regularly check that Plaintiffs have complied with Defendants' requirements; failure to comply can result in discipline.

31.     Defendants specify when baked goods must be removed from their customers' shelves.  Defendants will "buy back" a small percentage of the removed baked goods from the Plaintiffs.  Defendants impose strict limits on what Plaintiffs may do with the remaining baked goods that Defendants do not buy back.

32.     Plaintiffs' remuneration depends on their ability to drive their vehicles and deliver and stock Defendants' baked goods.

33.     When Plaintiffs do not follow Defendants' rules or instructions, they are subject to various types of discipline, including financial penalties.

///

34.     Plaintiffs have provided services that are an integral part of Defendants' business enterprise.  By providing vehicles, by reliably serving Defendants' customers, by following Defendants' controlled delivery routes and stock rotation schedules, and in other material ways, Plaintiffs have rendered services to Defendants that are integral to Defendants' baked goods distribution system.

35.     Despite Defendants' pervasive control over all aspects of its distribution and stocking operations, including over Plaintiffs, Defendants have uniformly classified and treated all Drivers as "independent contractors."

36.     Although the nature of the work performed by Plaintiffs makes detailed control by management unnecessary, Defendants retain the right to control and exercise extensive control over the work of Plaintiffs, and do in fact exercise such control.

37.     Defendants' right of control over Plaintiffs is retained and/or exercised by Defendants as demonstrated by Defendants' written rules and policies and unwritten practices.

38.     Defendants' classification and treatment of Plaintiffs throughout the period covered by this lawsuit as "independent contractors" rather than as "employees" is and has been unlawful.

39.     As a result of Defendants misclassifying Plaintiffs as "independent contractors," Defendants have unlawfully failed to indemnify Plaintiffs for employment-related expenses, including the costs of providing their leased or owned vehicles; all operation costs associated with the vehicle, including fuel, maintenance, repair, cleaning, and licensing; liability and other insurance covering work place injuries; cellular telephone and Defendants' designated text messaging services; uniform laundry fees; and miscellaneous tools, such as dollies and pallet jacks.  Defendants have also failed to indemnify Plaintiffs for employment-related losses, such as cargo loss or damage, and bodily and property damage claims.  Defendants have taken deductions from their compensation to cover many of these employment-related expenses.  Defendants have also charged Plaintiffs for "distribution rights" in order to work their route.  Under the Distribution Agreement, Defendants reserved the right to and have taken deductions from the compensation of Plaintiffs to cover many of these employment-related expenses.

///

40.     Defendants have regularly failed to provide a timely 30 minute off-duty meal period to Plaintiffs when they worked more than five hours in a day.

41.     Defendants have regularly failed to provide a second timely 30 minute meal period to Plaintiffs who worked more than 10 hours in a day.

42.     Defendants have failed to record the actual hours worked by Plaintiffs during the Class Period.

43.     Defendants have failed to itemize the total hours worked on wage statements furnished to Plaintiffs.

44.     In order to meet Flowers' expectations to deliver fresh product five days a week and service customer stops throughout the week, Plaintiffs regularly worked over eight hours in a day and 40 hours in a week throughout their tenure with Defendants. However, Defendants failed to compensate Delivery Drivers, including Plaintiffs, for all overtime hours worked, including all hours worked in excess of eight hours in one workday or 40 hours in any one workweek at the rate of no less than one and one-half times Plaintiffs' regular rate of pay, and all hours worked in excess of 12 hours in one workday at a rate of no less than two times their regular rate of pay.

45.     Plaintiffs are informed and on that basis allege that Defendants have not properly maintained payroll records showing the actual hours worked and meal periods taken and missed each day by Plaintiffs.

## VI.     DAMAGES

46.     As a direct, foreseeable, and proximate result of Defendants' conduct, Defendants owe Plaintiffs unreimbursed business expenses plus interest, repayment of unlawfully deducted wages plus interest, missed meal period compensation plus interest, missed paid rest period compensation plus interest, overtime premium pay and liquidated damages, statutory penalties, and attorneys' fees and costs, the precise amount of which will be proven at trial.

///

///

///

///

## VII.    CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**REIMBURSEMENT OF BUSINESS EXPENSES**
**(CAL. LABOR CODE § 2802)**

47.     The allegations in all of the preceding paragraphs are realleged and incorporated herein by reference.

48.     While acting on the direct instruction of Defendants and discharging their duties for them, Plaintiffs have incurred work-related expenses.  Such expenses include but are not limited to the costs of purchase or lease of vehicles; fuel, maintenance, and other vehicle operating costs; various forms of insurance; communications equipment and handheld device; cellular telephones; warehouse rent; and uniforms and laundry services.  Plaintiffs were also required to pay thousands of dollars for "distribution rights" in order to work their route.  Defendants have also held Plaintiffs accountable for losses such as out-of-date bake goods and shrink.  Plaintiffs necessarily incurred these substantial expenses and losses as a direct result of performing their job duties for Defendants.

49.     Defendants have failed to indemnify or in any manner reimburse Plaintiffs for these expenditures and losses. By misclassifying Plaintiffs as "independent contractors," and further by requiring those employees to pay expenses and cover losses that they incurred in direct consequence of the discharge of their duties for Defendants and/or in obedience to Defendants' direction, Defendants have violated and continue to violate Cal. Labor Code § 2802.

50.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered substantial losses according to proof, as well as pre-judgment interest, costs, and attorney fees for the prosecution of this action.

51.     Plaintiffs request relief as described below.

**SECOND CAUSE OF ACTION**
**UNLAWFUL DEDUCTIONS FROM WAGES**
**(CAL. LABOR CODE §§ 221, 223, 400-410, IWC. WAGE ORDER NO. 1)**

52.     The allegations in all of the preceding paragraphs are realleged and incorporated herein by reference.

///

53.     Labor Code § 221 provides:  "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

54.     Labor Code § 223 provides:  "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

55.     Labor Code §§ 400-410 ("Employee Bond Law") provide the limited circumstances under which an employer can exact a cash bond from its employees.  These provisions are designed to protect employees against the very real danger of an employer taking or misappropriating employee funds held by the employer in trust.

56.     IWC wage order No. 1, § 8 provides that the only circumstance under which an employer can make a deduction from an employee's wage due to cash shortage, breakage, or loss of equipment is if the employer can show that the shortage, breakage, or loss was the result of the employee's gross negligence or dishonest or willful act.

57.     These and related statutes, along with California's fundamental public policy protecting wages and wage scales, prohibit employers from subjecting employees to unanticipated or unpredicted reductions in their wages; making employees the insurers of their employer's business losses; otherwise passing the ordinary business losses of the employer onto the employee; taking deductions from wages for business losses unless the employer can establish that the loss was caused by a dishonest or willful act, or gross negligence of the employee; or taking other unpredictable deductions that may impose a special hardship on employees.

58.     Defendants have violated Cal. Labor Code §§ 221, 223, and 400-410, and IWC wage order No. 1, § 8 by unlawfully taking deductions from Plaintiffs' compensation to cover certain ordinary business expenses of Defendants, including but not limited to out-of-date baked goods pulled from customers' stock, and shrink.  Defendants also deducted from Plaintiffs' wages the cost of "distribution rights," which Defendants charged Plaintiffs in order to work their routes.

59.     Because Defendants took unlawful deductions from Plaintiffs' compensation, they are liable to Plaintiffs for the compensation that should have been paid but for the unlawful

deductions, pursuant to Cal. Labor Code §§ 221, 223, and 400-410, and IWC wage order No. 1, § 8.

60.     By unlawfully deducting wages and failing to pay Plaintiffs, Defendants are also liable for penalties, reasonable attorneys' fees, and costs under Labor Code §§ 218.5 and 1194.

61.     Plaintiffs request relief as described below.

### THIRD CAUSE OF ACTION
### FAILURE TO PROVIDE OFF-DUTY MEAL PERIODS
### (CAL. LABOR CODE §§ 226.7, 512, IWC WAGE ORDER NO. 1)

62.     The allegations in all of the preceding paragraphs are realleged and incorporated herein by reference.

63.     Plaintiffs have regularly worked in excess of five (5) hours a day without being afforded at least a half-hour meal period in which they were relieved of all duties, as required by Cal. Labor Code §§ 226.7 and 512, and IWC wage order No. 1, § 11(A).

64.     Because Defendants failed to afford proper and timely meal periods, they are liable to Plaintiffs for one hour of additional pay at the regular rate of compensation for each workday that the proper meal periods were not provided, pursuant to Cal. Labor Code § 226.7(b) and IWC wage order No. 1, § 11(B).

65.     By violating Cal Labor Code §§ 226.7 and 512, and IWC wage order No. 1, § 11, Defendants are also liable for penalties, reasonable attorneys' fees, and costs under Cal. Labor Code §§ 218.5 and 1194.

66.     Plaintiffs request relief as described below.

### FOURTH CAUSE OF ACTION
### FAILURE TO PAY EMPLOYEES FOR REST BREAKS
### (CAL. LABOR CODE §§226.7, 1194 AND 1194.2, IWC WAGE ORDER NO. 1)

67.     The allegations in all of the preceding paragraphs are realleged and incorporated herein by reference.

68.     IWC Wage Order No. 1, §12(A), provides in pertinent part as follows: "Every employer shall authorize and permit all employees to take rest periods . . . .  The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest

time per four (4) hours or major fraction thereof. . . .   Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages."

69.     Plaintiffs were compensated for delivering baked goods based on Defendants' determination of a commission, and Plaintiffs were not separately compensated for taking duty-free rest periods.

70.     Plaintiffs were unable to deliver baked goods and/or earn a commission while taking duty-free rest periods, and therefore were precluded from earning compensation during any time during which they managed to take a duty-free rest period.

71.     Defendants failed to authorize and permit Plaintiffs to take a ten-minute paid rest period for each four hours of work or major fraction thereof.

72.     Thus, Plaintiffs regularly worked in excess of three and a half hours a day without being provided at least one paid 10-minute rest period in which they were relieved of all duties, as required by Labor Code § 226.7, and IWC wage order No. 1, §12(A).

73.     Thus, Plaintiffs regularly worked in excess of six hours a day without being provided at least two paid 10-minute rest periods in which they were relieved of all duties, as required by Labor Code § 226.7 and IWC wage order No. 1, §12(A).

71.     Because Defendants failed to authorize and permit Plaintiffs compliant rest periods, they are liable to Plaintiffs for one hour of additional pay at the regular rate of compensation for each workday that the compliant rest periods were not provided, attorneys' fees, penalties, and interest, pursuant to Labor Code §§ 226.7(b), 218.5, and 1194, and IWC wage order No. 1, §12(B).

74.     Plaintiffs request relief as described below.

### FIFTH CAUSE OF ACTION
### FAILURE TO FURNISH ACCURATE WAGE STATEMENTS
### (CAL. LABOR CODE §§ 226 & 226.3; IWC WAGE ORDER NO. 1)

75.     The allegations in all of the preceding paragraphs are realleged and incorporated herein by reference.

76.     Cal. Labor Code § 226(a) and IWC wage order No. 1, § 7(B) require employers semi-monthly or at the time of each payment of wages to furnish each employee with a statement itemizing, among other things, the total hours worked by the employee.  Cal. Labor Code § 226(b)

provides that if an employer knowingly and intentionally fails to provide a statement itemizing, among other things, the total hours worked by the employee, then the employee is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial violation and one hundred dollars ($100) for each subsequent violation, up to four thousand dollars ($4,000).

77.     Defendants knowingly and intentionally failed to furnish Plaintiffs with timely, itemized statements showing the total hours worked, as required by Cal. Labor Code § 226(a) and IWC wage order No. 1, § 7(B).  As a result, Defendants are liable to Plaintiffs for the amounts provided by Cal. Labor Code § 226(b) and for penalties, and attorneys' fees.

78.     Plaintiffs request relief as described below.

**SIXTH CAUSE OF ACTION**
**FAILURE TO PAY CALIFORNIA OVERTIME COMPENSATION**
**(LABOR CODE §§ 510, 1194, *ET SEQ.*, IWC WAGE ORDER NO. 1)**

79.     Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

80.     Plaintiffs regularly worked over eight hours in a day and over 40 hours in a week while serving as Flowers Delivery Drivers, for which Defendants did not pay them overtime premium compensation.

81.     By failing to pay overtime compensation to Plaintiffs, as alleged above, Defendants violated Labor Code § 510 *et. seq* and IWC wage order No. 1, § 3.

82.     As a result of Defendants unlawful acts, Plaintiffs have been deprived of overtime compensation in an amount to be determined at trial, and is entitled to recovery of such amounts, plus interest thereon, and attorneys' fees and costs, under Labor Code § 1194.

83.     Plaintiffs request relief as described below.

**SEVENTH CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA**
**(29 U.S.C. §§ 207, 216(B))**

84.     Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

///

///

85.     As set forth above, Defendants violated the FLSA with respect to Plaintiffs by failing to pay proper overtime pay for all hours worked in excess of 40 hours in a week.  29 U.S.C. § 207.

86.     Plaintiffs are entitled to recover overtime compensation, at one and one-half times their regular rate of pay, for all hours worked in excess of 40 hours in a week.

87.     In addition, Plaintiffs are entitled to liquidated damages in an amount equal to their unpaid wages and overtime wages.

88.     Moreover, Plaintiffs are entitled to reasonable attorneys' fees and costs.  29 U.S.C. § 216(b).

### EIGHTH CAUSE OF ACTION
### VIOLATIONS OF THE UNFAIR COMPETITION LAW (UCL)
### (CAL. BUSINESS & PROFESSIONS CODE §§ 17200-09)

89.     The allegations in all of the preceding paragraphs are realleged and incorporated herein by reference.

90.     Cal. Business & Professions Code § 17200 prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business act or practice.

91.     Cal. Business & Professions Code § 17204 allows "any person acting for the interests of itself, its members or the general public" to prosecute a civil action for violation of the UCL.

92.     Beginning at an exact date unknown to Plaintiffs, but at least since approximately January 2012, Defendants have improperly, fraudulently, and unlawfully classified its Delivery Drivers as "independent contractors" and have thereby committed unlawful, unfair, and/or fraudulent business acts and practices as defined by Cal. Business & Professions Code § 17200, by engaging in the following:

          a.     failing to indemnify Plaintiffs for employment-related business expenses and losses;

          b.     improperly and unlawfully making deductions from Plaintiffs' compensation because of the return out-of-date product, work-related expenses and losses not attributable to Plaintiffs' dishonest or willful act, or to the gross negligence of the Plaintiffs, as described above;

- 17 -
COMPLAINT FOR DAMAGES

1           c.     failing and refusing to provide meal periods to Plaintiffs;

2           d.     failing to authorize and permit paid rest periods to Plaintiffs;

3           e.     unlawfully deducting money from wages owed to Plaintiffs;

4           f.     failing to provide accurate itemized wage statements to Plaintiffs;

5           g.     failing to pay overtime compensation to Plaintiffs;

6           h.     by intentionally, recklessly and/or negligently misrepresenting to Plaintiffs

7    the true nature of their employment status.

8           i.     willfully and unlawfully misclassifying Plaintiffs as independent contractors

9    in violation of California Labor Code § 226.8 & and IWC Wage Order No. 1;

10   93.     The violations of these laws serve as unlawful, unfair, and/or fraudulent predicate

11   acts and practices for purposes of Cal. Business and Professions Code § 17200.

12   94.     As a direct and proximate result of Defendants' unlawful, unfair, and/or fraudulent

13   acts and practices described herein, Defendants have received and continue to hold ill-gotten gains

14   belonging to Plaintiffs.  As a direct and proximate result of Defendants' unlawful business

15   practices, Plaintiffs have suffered economic injuries including, but not limited to out-of-pocket

16   business expenses, unlawful deductions from compensation, compensation for missed meal

17   periods and rest breaks.  Defendants have profited from their unlawful, unfair, and/or fraudulent

18   acts and practices in the amount of those business expenses, improper deductions from

19   compensation, meal and rest period compensation, and interest accrued by Plaintiffs.

20   95.     Plaintiffs are entitled to restitution pursuant to Cal. Business & Professions Code

21   §§ 17203 and 17208 for all unpaid business expenses, unlawful deductions from compensation,

22   meal and rest period compensation, and interest since January 2012.

23   96.     Plaintiffs are entitled to enforce all applicable penalty provisions of the Cal. Labor

24   Code pursuant to Cal. Business & Professions Code § 17202.

25   97.     By all of the foregoing alleged conduct, Defendants have committed, and are

26   continuing to commit, ongoing unlawful, unfair and fraudulent business practices within the

27   meaning of Cal. Business & Professions Code §17200 et seq.

28        ///

98.     As a direct and proximate result of the unfair business practices described above, Plaintiffs have all suffered significant losses and Defendants have been unjustly enriched.

99.     Pursuant to Cal. Business & Prof. Code §17203, Plaintiffs are entitled to: (a) restitution of money acquired by Defendants by means of their unfair business practices, in amounts not yet ascertained but to be ascertained at trial; (b) a declaration that Defendants' business practices are unfair within the meaning of the statute.

100.     Plaintiffs have assumed the responsibility of enforcement of the laws and lawful claims specified herein.  There is a financial burden incurred in pursuing this action which is in the public interest.  Therefore, reasonable attorneys' fees are appropriate pursuant to Cal. Code of Civil Procedure § 1021.5.

101.     Plaintiffs request relief as described below.

## VIII.   REQUEST FOR JURY TRIAL

102.     Plaintiffs request a trial by jury.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request relief as follows:

A.     A declaratory judgment that Defendants have knowingly and intentionally violated the following provisions of law:

1.     Cal. Labor Code § 2802 by failing to indemnify Plaintiffs for all necessarily incurred business expenses and losses;

2.     Cal. Labor Code §§ 221 and 400-410 and IWC wage order No. 1, by making unlawful deductions from the compensation paid to Plaintiffs for ordinary business expenses and losses without a showing that the expenses and/or losses were due to Plaintiffs' dishonest or willful act, or to their gross negligence;

3.     Cal. Labor Code §§ 226.7 and 512, and IWC wage order No. 1 by failure to provide off-duty meal periods to Plaintiffs;

4.     Cal. Labor Code §§ 226.7 and 1194, and IWC wage order No. 1 by failure to authorize and permit paid rest periods to Plaintiffs;

///

5.      Cal. Labor Code § 226 and IWC wage order No. 1, § 7(B), by failing to provide Plaintiffs with itemized statements of total hours worked with each payment of wages;

6.      Labor Code §§ 510, 1194, *et seq.*, and IWC wage order No. 1 by failing to pay proper overtime compensation to Plaintiffs;

7.      Cal. Business and Professions Code §§ 17200-17208, by failing to reimburse Plaintiffs for necessarily incurred business expenses, by requiring Plaintiffs to indemnify Defendants for ordinary business losses, by failing to provide off-duty meal periods and/or pay meal period compensation to Plaintiffs, by failing to authorize and permit paid rest breaks and/or missed rest break compensation to Plaintiffs, by failing to provide Plaintiffs with itemized wage statements showing all hours worked, by failing to maintain payroll records that document all hours worked by Plaintiffs; and by failing to pay Plaintiffs overtime premium pay;

B.      A declaratory judgment that Defendants' violations as described above were willful;

C.      An award to Plaintiffs of damages in the amount of necessarily incurred business expenses, amounts unlawfully deducted from wages, meal and rest period compensation, and interest thereon, subject to proof at trial;

D.      An award to Plaintiffs of statutory penalties because of Defendants' failure to provide Plaintiffs with itemized wage statements that comply with the requirements of Cal. Labor Code § 226, subject to proof at trial;

E.      An order requiring Defendants to pay restitution of all amounts owed to Plaintiffs for Defendants' failure to reimburse for business expenses, amounts unlawfully deducted from wages, failure to pay legally required meal and rest period pay, and interest thereon, in an amount according to proof, pursuant to Business & Professions Code § 17203;

F.      An award to Plaintiffs of reasonable attorneys' fees and costs, pursuant to Cal. Code of Civil Procedure § 1021.5 and Cal. Labor Code §§ 218.5, 226, 1194, and 2802, the FLSA, 29 U.S.C. § 216, and/or other applicable law; and

///

///

///

G.      An award to Plaintiffs of such other and further relief as this Court deems just and proper.


DATED:  September 1, 2017.                    LEONARD CARDER



                                        By: _/s/ Aaron Kaufmann_____
                                            AARON KAUFMANN
                                            *Attorneys for Plaintiffs*


                                        RUKIN HYLAND DORIA & TINDALL

                                        By: _/s/ Peter Rukin_____
                                            PETER RUKIN
                                            *Attorneys for Plaintiffs*

COMPLAINT FOR DAMAGES